IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLIFFORD CHARLES MEANO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 05-CV-0114-CVE-PJC |
| ) | |
| DAVID MILLER, Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner Clifford Charles Meano is a state inmate appearing *pro se*. Respondent filed a response to the petition (Dkt. # 10). Respondent also provided state court records and trial transcripts (Dkt. ## 10, 11, 12) for the Court's use in evaluating Petitioner's claims. Petitioner did not file a reply to Respondent's response. For the reasons discussed below, the Court finds the petition (Dkt. ## 1, 13) should be denied.

### *BACKGROUND*

Petitioner was tried and convicted by a jury of ten (10) counts of Sexually Abusing a Minor, in Tulsa County District Court, Case No. CF-2001-1971. The victim (hereinafter "J.T.") was Petitioner's common-law stepdaughter,[1] and the incidents of abuse occurred over a five year period of time beginning when J.T. was eleven (11) years old. The jury recommended a sentence of forty-five (45) years imprisonment on each of the ten counts. On July 30, 2002, the trial court sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. Petitioner was represented at trial by attorney John H. Dalton.

---

[1] Although Petitioner was not married to J.T.'s mother, they lived together as a family. J.T. referred to Petitioner as her step-father. See, e.g., Dkt. # 1, attachment A.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Kimberly Heinze, Petitioner raised six (6) claims as follows:

| | |
|---|---|
| Proposition I: | The State's evidence was insufficient to support the convictions, particularly counts 7, 9, & 11 where evidence established Mr. Meano was not living in the home of J.T. or her mother, and thus was not a person responsible for J.T.'s health or safety. |
| Proposition II: | The trial court erred by forcing Mr. Meano to trial absent direct and certain allegations in denial of his right to due process and a full and fair opportunity to prepare and present a defense. |
| Proposition III: | Mr. Meano was prejudiced by improper admission of hearsay and child hearsay evidence absent sufficient indicia of teenage witness reliability. |
| Proposition IV: | The trial court's improper restriction of impeachment of the State's key witness for bias, motive and prejudice denied Mr. Meano a fair trial. |
| Proposition V: | The trial court's sentencing decision was an abuse of discretion because it punished Mr. Meano for exercising his right to jury trial by refusing consideration of a concurrent sentence. |
| Proposition VI: | The cumulative effect of all the errors addressed above deprived Appellant of a fair trial. |

See Dkt. # 10, Part 2. Petitioner also filed a motion for new trial in OCCA Case No. F-2002-989. See Dkt. # 10, Part 3. In support of his motion, Petitioner presented an affidavit of J.T., which he characterized as a recantation by J.T., the State's main witness. See id. at 8. In an unpublished summary opinion, filed November 7, 2003, in Case No. F-2002-989, the OCCA rejected each of Petitioner's claims and affirmed the Judgment and Sentence of the trial court. See Dkt. # 10, Part 5. The OCCA also denied the motion for a new trial. Id. at 2. Nothing in the record suggests that Petitioner filed a petition for a *writ of certiorari* in the United States Supreme Court. Petitioner did not seek post-conviction relief in the state courts.

On December 7, 2004, Petitioner filed his federal petition for writ of habeas corpus in the United States District Court for the Western District of Oklahoma. See Dkt. # 1-1. The case was transferred to this Court by Order dated February 18, 2005. See Dkt. # 1-2. Petitioner raises the following grounds for relief:

> Ground 1: New evidence. Transcript and taped recantation from the alleged victim.
>
> Ground 2: Denial of due process as guaranteed by the Constitution of the United States of America. Denied the fair opportunity to prepare and present a defense.
>
> Ground 3: New evidence was submitted to the Court and was not allowed as new evidence.

See Dkt. ## 1, 13. In response to the petition, Respondent argues that Petitioner's claims were properly denied by the OCCA. See Dkt. # 10 at 3.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). The Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case because Petitioner raised his claims on direct appeal. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B. Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, Petitioner presented his claims on direct appeal where they were adjudicated by the OCCA. Therefore, the § 2254(d) standard applies to this Court's analysis of Petitioner's claims.

*Recantation evidence (grounds 1 and 3)*

In ground one, Petitioner claims his convictions should be reversed based on newly discovered evidence: J.T.'s alleged recantation. The new evidence is set forth in a notarized letter, dated February 3, 2003, from J.T. and addressed "To Whom it May Concern." See Dkt. # 1-1, attachment. Petitioner has also provided a videotaped recording of J.T. reading the letter, along with a transcript of the videotape. Id. In ground three, Petitioner challenges the OCCA's denial of his motion for a new trial based upon J.T.'s recantation. Respondent contends that the OCCA's denial

4

of a new trial based upon the recantation was not contrary to or an unreasonable application of Supreme Court law.[2]

The Court has reviewed J.T.'s letter and videotape, the transcript of the videotape, and the relevant state court record. After thorough consideration of Petitioner's arguments, the Court finds that he is not entitled to habeas corpus relief on either ground one or ground three. In denying Petitioner's request for a new trial and his claim of insufficient evidence to support his convictions, the OCCA noted, "J.T.'s testimony was sufficiently corroborated by [the testimony of] Kandy Crisman-Feryanitz." See Dkt. # 10, Part 5 at 2. At trial, state's witness Crisman-Feryanitz testified as follows:

>  Q: Did Mr. Meano ever come to your apartment?
>
>  A: Yes.
>
>  Q: Did he ever bring anyone with him?
>
>  A: On occasion.
>
>  Q: Who did he bring with him?
>
>  A: [J.T.]
>
>  Q: And is that the young lady that was just in here?
>
>  A: Yes.

---

[2] In denying Petitioner's motion for a new trial, the OCCA cited Cleary v. State, 942 P.2d 736, 745 (Okla. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998) (applying the following standard to evaluate whether a witness's recantation warranted relief: (1) whether the recantation would have changed the trial result, Smith v. State, 826 P.2d 615, 617 (Okla. Crim. App.), *cert. denied*, 506 U.S. 952 (1992); or (2) whether the recantation would have a probable effect on the verdict. Hale v. State, 807 P.2d 264, 268 (Okla. Crim. App.), *cert. denied*, 502 U.S. 902 (1991)).

> Q: Kandy, while you lived in that apartment, did you witness anything that you felt was inappropriate?
>
> A: Yes.
>
> Q: And who did that involve?
>
> A: Chris [Petitioner] and [J.T.].
>
> Q: And when you say Chris, who are you referring to?
>
> A: Clifford Meano. I've always known him as Chris.
>
> Q: And when you say it involved J.T. and the defendant, what exactly did you see?
>
> A: I caught them in a sex act. [J.T.] was on top of Chris, and she was telling him to hurry up, that it hurt, and everything like that. I don't know how long it lasted or anything like that. It seemed like a long time, but I'm sure it wasn't as long as it seemed.
>
> Q: And where did that occur?
>
> A: In my bedroom.
>
> Q: And when you say you saw them involved in a sex act, what exactly were they doing?
>
> A: Intercourse.
>
> Q: When you saw that, what did you do?
>
> A: Well, I was kind of in shock and kind of -- I'd asked Chris about it. I talked to him, I believe, basically when I said something -- I don't remember exactly what I said, but that effectively ended what was going on. I discussed it with [J.T.] a few days later. Shock, disbelief, not knowing what to do or say. . . .

Dkt. # 12, Tr. Trans. at 402-06. When asked if she had a conversation with Petitioner about what she saw him doing with J.T., Ms. Crisman-Feryanitz stated that Petitioner admitted "that he had been having a sexual relationship with [J.T.] for quite awhile." Id. at 406. The Court also notes that during

6

the trial, J.T. provided extensive testimony describing the acts committed by Petitioner constituting the crimes for which he was convicted. Id. at 260-293.

In habeas proceedings, this Court applies a presumption of correctness to the factual findings of the state court unless the petitioner can show otherwise by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The credibility of a witness is an issue of fact. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989). Although the OCCA did not explicitly evaluate the credibility of J.T.'s recantation, the appellate court nonetheless found that a new trial was not warranted. It is clear that the OCCA implicitly found J.T.'s trial testimony more credible than her recantation, see, e.g., Marshall v. Lonberger, 459 U.S. 422, 433 (1983) (even though state court did not make express credibility finding, federal court could assume state court found petitioner not credible, in light of court's ruling), and that due to the corroborating testimony of Ms. Crisman-Feryanitz, the recantation either would not have changed the trial result or would not have had a probable effect on the verdict. These findings are presumed correct, 28 U.S.C. § 2254(e)(1), and Petitioner offers no evidence to rebut the presumption of correctness. In addition, to the extent Petitioner may be asserting that the OCCA's decision was a violation of his due process rights, mere recantation is insufficient to grant relief. See Hysler v. Florida, 315 U.S. 411, 413 (1942).

Finally, to the extent Petitioner is claiming actual innocence as "proved" by the recantation of J.T., he is not entitled to habeas relief. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). This rule is "grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of

fact." Id. This Court is not dealing with Petitioner's innocence or guilt, but whether his constitutional rights have been preserved. "Federal courts are not forums in which to relitigate state trials." Barefoot v. Estelle, 463 U.S. 880, 887 (1983), *superseded by statute as stated in* Slack v. McDaniel, 529 U.S. 473 (2000). In the case at hand, Petitioner has failed to convince the Court that his Constitutional rights were violated during the state court proceedings. He is not entitled to habeas relief on ground one or ground three.

*Due process violation (ground two)*

In his second ground for relief, Petitioner contends that his due process rights were violated because he was unable to prepare and present a defense to the multiple counts against him Specifically, Petitioner claims that the accusations made by J.T. were not specific as to date and time. Consequently, he was unable to present an alibi defense. The OCCA rejected this claim on direct appeal, finding:

> As to Proposition II, we note similar arguments have been rejected by other courts. *See e.g. State v. Wilson,* 77 Conn.App. 405, 822 A.2d 406 (2003); *Malee v. State*, 147 Md.App. 320, 809 A.2d 1 (2002); *State v. Taylor*, 797 P.2d 158 (Idaho App. 1990). We are persuaded by the reasoning expressed in *Taylor*, 797 P.2d at 160. It goes without saying that the State must narrow the time period as best as it can under the circumstances. However, a defendant should not be allowed to escape liability simply by asserting alibi, especially with child victims. In the instant case, J.T. testified that Appellant had sex repeatedly with her over a period of four to five years which was corroborated by Kandy Crisman-Feryanitz. Given the time span and J.T.'s age, it is not surprising that J.T. could not recall with specificity the exact dates of specific incidents. She described the incidents by describing the abuse and her age while living there. Following the testimony of both J.T. and Appellant, the jury chose to believe J.T.'s testimony that the consistent, repetitive pattern of acts occurred rather than to believe Appellant's denial of any abuse with the exception of Count 6. Because Appellant lived in the home and was routinely alone with J.T., it would be next to impossible for him to have produced alibi witnesses to prove his whereabouts over four to five years. The case turned on the jury's decision concerning J.T.'s and Appellant's credibility. Given these circumstances, we adopt the reasoning expressed in *Taylor* and find that the Information was sufficient and

>   that Appellant was not denied due process. *See Parker v. State,* 917 P.2d 980, 985-87 (Okl.Cr. 1996), *cert. denied,* 519 U.S. 1096, 117 S. Ct. 777, 136 L.Ed.2d 721 (1997).

Dkt. # 10, Part 5 at 3-4.

A defendant is entitled to fair notice of the criminal charges against him under the Sixth Amendment's right to a fair trial and the Fourteenth Amendment's guarantee of due process, and claims that a defendant's due process rights were violated by not providing such fair notice are cognizable in habeas corpus proceedings. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999). In this case, Petitioner received ample notice of the charges against him in the charging Information and at the preliminary hearing. Although the charges did not specify a particular day when the alleged incidences of sexual abuse occurred, Petitioner was advised of the general time period, the places where the incidences occurred, and the details surrounding each of the events. Clearly, he received adequate notice of the charges he was to defend against. The Court finds that the OCCA's resolution of this issue was not an unreasonable application of Supreme Court law. Habeas relief shall be denied on Petitioner's ground two claim.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus (Dkt. ## 1, 13) is **denied**.

**DATED** this 9th day of October, 2008.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT